PERCELL SKINNER v. CHARLIE H. JERNIGAN AND EDDIE P. AUSTIN
AND
PERCY BROTHERS, A MINOR, BY HIS FATHER AND NEXT FRIEND JAMES BROTHERS, v. CHARLIE H. JERNIGAN AND EDDIE P. AUSTIN.

(Filed 23 September, 1959.)

**1. Appeal and Error § 60—**

  Decision on a former appeal that the evidence was sufficient to be submitted to the jury on the issue of negligence precludes the contention that nonsuit should have been entered upon the subsequent trial upon substantially identical evidence.

**2. Negligence §§ 11, 16—**

  Acts or omissions relied on as constituting contributory negligence must be specifically pleaded by defendant in his answer and proven by him on the trial.

**3. Negligence § 19c:  Automobiles §§ 44, 49—**

  Where defendant driver does not allege that plaintiffs, passengers standing on the body of the truck, were guilty of contributory negligence in shifting their weight as defendant was turning a curve, so as to contribute to the truck's overturning upon the curve, the court properly disregards such element of contributory negligence in passing upon the sufficiency of the evidence to require the submission of the issue of contributory negligence to the jury.

**4. Automobiles § 42i, 49—**

  The fact that plaintiff passengers were standing on the body of an unloaded truck holding on to the cab and the sides of the truck, in the absence of any evidence showing circumstances indicating that such position was inherently or apparently dangerous, is insufficient to require the submission of the issue of the contributory negligence of plaintiffs to the jury. Further, even if it be conceded that such acts constituted contributory negligence, the taking of such position could not be a proximate cause of an accident occurring when the truck overturned on a curve because of excessive speed.

**5. Automobiles § 49—**

   Where the evidence tends to show that the truck overturned when the driver attempted to turn into a paved road from an intersecting dirt road at an excessive speed, that plaintiffs, standing on the body of the truck and holding on to the cab and sides of the truck, remonstrated with the driver about the excessive speed prior to the accident but had no opportunity to leave the truck prior thereto, the evidence is insufficient to support the submission to the jury of an issue of their contributory negligence.

**6. Automobiles § 54f—**

   Where evidence discloses that an employee was driving the vehicle registered in the name of the employer, and there is evidence that the employee was driving on the occasion in question on a purely personal mission without the knowledge or consent of the employer, the court by virtue of G.S. 20-71.1, properly submits the issue of the employer's liability to the jury under instructions that if the jury should find that the employee was engaged in a purely personal mission without the knowledge or consent of the employer the jury should answer the issue in the negative.

   HIGGINS, J., not sitting.

APPEAL by defendants from *Paul, J.,* January Civil Term 1959 of PERQUIMANS.

Two civil actions instituted to recover damages in each case for personal injuries sustained by the overturning of a motor truck, alleged to have been caused by the actionable negligence of the defendant Austin, who was driving the motor truck at the time as an agent or employee of his co-defendant Jernigan and with his knowledge and consent.

The two alleged causes of action grew out of the same overturning of the motor truck. By consent of the parties the two cases were tried together, and so heard on appeal in this Court.

These cases were before this Court at the Fall Term 1956, upon the appeal of the defendants from judgments based on verdicts awarding the plaintiff Brothers damages in the amount of $35,000.00, and the plaintiff Skinner damages in the amount of $500.00. In the first trial, as in the second trial, the suits of the two plaintiffs were tried together in the Superior Court, and so heard on appeal in this Court. The opinion of this Court on the former appeal is reported in 244 N.C. 441, 94 S.E. 2d 316, where a summary of the evidence of the parties at the first trial is stated, to which reference is hereby specifically made. In the first trial the defendants excepted to the denial of their motions for judgments of nonsuit. This Court on the former appeal held that these motions for judgments of nonsuits were properly denied. However, a new trial was granted because of the

admission of incompetent and prejudicial evidence as to the defendant Jernigan.

The second trial was had at the January Civil Term 1959 of Perquimans County Superior Court. The pleadings of the plaintiffs and the defendant Jernigan were the same in both trials. In 1957 the defendant Austin attained his majority, and by an order of court entered at the October Term 1957 of Perquimans County Superior Court the answers of his *guardian ad litem* were withdrawn, and he filed answers as an adult. The answers of Austin's *guardian ad litem* and his own answers were substantially the same in both trials, with these exceptions: the answers of the *guardian ad litem* admit that on the night referred to in the complaints Austin was driving the motor truck with the general knowledge and general consent of his co-defendant Jernigan, and do not deny allegations in the complaints that he was driving the motor truck as agent, servant or employee of his co-defendant Jernigan: the answers filed by Austin as an adult admit that he was driving the motor truck on the night referred to in the complaints, but deny that his co-defendant Jernigan had any knowledge of the fact, and deny that he was driving the motor truck as the agent, servant or employee of his co-defendant Jernigan. All the parties offered evidence at the second trial, as they did at the first trial. We have carefully studied the evidence offered at both trials, and the evidence of all the parties at the second trial was substantially the same as that presented by all the parties at the first trial, with this exception: the plaintiffs in the second trial did not offer in evidence the admission in the answers of the defendant Austin's *guardian ad litem* that on the night referred to in the complaints Austin was driving the motor truck with the general knowledge and consent of his co-defendant Jernigan, which evidence this Court held on the former appeal was incompetent and prejudicial to the defendant Jernigan. The defendants in their joint brief make no contention that the evidence in both trials was not substantially the same.

In the second trial these issues were submitted to the jury in the case of plaintiff Percy Brothers and answered as appears:

"1. Were the injuries to the plaintiff Percy Brothers proximately caused by the negligence of Eddie P. Austin, as alleged in the Complaint?
ANSWER: Yes.

"2. If so, was Eddie P. Austin at the time the agent or employee of Charlie H. Jernigan and engaged in the discharge of his duties as such?
ANSWER: Yes.

"3. What amount, if any, is the plaintiff Percy Brothers entitled to recover?
                ANSWER: $25,000.00."

Identical issues were submitted in the case of plaintiff Percell Skinner, and answered in the same way, except that the amount of damages awarded was $500.00.

The trial judge entered judgments for the plaintiffs in accordance with the verdicts, and the defendants appealed.

*Robert B. Lowry and John H. Hall for plaintiffs, appellees.*
*LeRoy, Goodwin & Wells for defendant, appellant Jernigan.*
*Walter H. Oakey for defendant, appellant Austin.*

PARKER, J. Both defendants assign as error the refusal of the trial court to dismiss both actions upon compulsory nonsuits at the close of all the evidence. G.S. 1-183.

Counsel for the defendants strenuously contend that both actions should have been involuntarily nonsuited in the Superior Court. They made the same contention on the first appeal, and their argument on the second appeal in their brief is merely an elaboration of their argument on the same question in their brief on the first appeal. We are compelled to hold under our decisions that this question is foreclosed against the defendants by our decision on the former appeal adjudging the plaintiffs' evidence sufficient to carry the case to the jury. This is true for the simple reason that the evidence adduced by the plaintiffs at the second trial is substantially the same as that presented by them at the first trial, and considered by us on the former appeal. *Glenn v. Raleigh,* 248 N.C. 378, 103 S.E. 2d 482; *Jernigan v. Jernigan,* 238 N.C. 444, 78 S.E. 2d 179, and the numerous cases there cited. The trial court properly overruled defendants' motions for compulsory nonsuits of plaintiffs' actions.

Defendants assign as error the refusal of the trial court to submit to the jury in each case an issue tendered by them as follows: Did the plaintiff by his own negligence contribute to his injuries, as alleged in the answer?

Plaintiffs' evidence, and the evidence of defendants favorable to them, in the second trial tended to show that around midnight of 22 May 1954 the plaintiffs were at Southern Shores Beach, that they saw the defendant Austin there driving the defendant Jernigan's motor truck, and he agreed to give them a ride to the Town of Hertford. When they left with Austin driving, Austin and two persons were riding in the cab, and two other young men and the plaintiffs were in the bed of the truck. The truck was a ¾-ton stake body

truck, with the stake body built over the bed to make it a little larger. The stakes were above the bed with boards running along them. These boards or rails were as high as the cab. The wooden boards running across the back of the cab had cracks in them. Percell Skinner was standing in the bed of the truck behind the driver, Austin, holding on to the cab, Percy Brothers was standing in the bed of the truck behind Skinner with one hand on the cab and one hand holding on the rail between the stakes. The other two persons in the bed of the truck were also standing up. There was nothing in the bed of the truck, except these four people. Austin was driving along a dirt road with bumps and holes to Harvey Point Road, a hard-surfaced road. He began driving so fast, 55 to 60 miles an hour, that the four persons in the bed of the truck started beating on the cab, and asked Austin to slow down. At that time Skinner and Percy Brothers leaned on the side of the truck. Austin stuck his head out of the cab, and said, "I am going to dust you boys off." Driving along this dirt road into the Harvey Point Road there is a sharp curve to the right. Austin tried to make this curve at a speed of about 50 miles an hour. The Harvey Point Road, on which the truck was entering, is on a little slant at that point. That slant is lower on the side away from the Southern Shores dirt road, so that a truck coming off this dirt road, and turning to the right, has a slant to its left after it gets to or on the Harvey Point Road. As Austin made his turn, the other persons in the bed of the truck to Skinner's right, according to his testimony, came over to his side. The truck turned over, and threw both plaintiffs out. The three persons in the cab were not thrown out. Skinner testified he did not know how many times it turned over. Percy Brothers testified that to his knowledge the truck turned over twice. It came to rest in a ditch on the left side of the Harvey Point Road going towards the Town of Hertford, about 40 or 50 feet from the intersection of the two roads. Percell Skinner was pinned under its front fender and running board, and Percy Brothers was pinned under the back of the truck. Thomas Jenkins, a witness for plaintiffs, was riding in the bed of the truck, and also David Skinner. When Jenkins saw that Austin was not going to slow down, as he approached Harvey Point Road, he went to the rear of the truck, took hold of its side, and had his right foot in the truck and his left foot on the bumper. When the truck began to turn over he jumped, and landed on his shoulder on the edge of a cotton field near a ditch. David Skinner was not a witness, and the evidence does not show what happened to him, when the truck turned over.

Johnny Johnson, a witness for the defendants, was riding in the

cab. He testified that when the truck turned into the Harvey Point Road "the truck commenced sloping to the left because of the road slanting. As we were turning the weight felt like it shifted to the left. The truck turned over."

The defendant Austin testified in part as follows: "Where you go into the Harvey Point Road, it is a sharp turn, almost at right angles. I turned to the right. . . . It felt as if the weight shifted in my truck to the left as I made the turn onto the hard-surfaced road. The truck turned over very shortly after that. The truck turned over close by the ditch, about 50 feet from the intersection. The highway at that point slopes to the left as you are coming towards Hertford." Austin admitted as he was getting ready to leave, Skinner asked him for a ride home, and he told him it would be all right.

The defendant Jernigan, as a witness for himself, stated the truck was being driven at the time by Austin without his knowledge or consent, and that Austin then was not acting as his agent or employee.

Jernigan's allegations of contributory negligence are in substance that plaintiffs contributed to their injuries by their own negligence in that, without any invitation or permission, they voluntarily placed themselves in a position of danger by riding in a part of the truck not intended for the use of passengers, and by their presence in the bed of the truck with other unauthorized persons, made the truck more difficult to manage, and made injury to them more likely in the event of a mishap. Austin's plea of contributory negligence is the same, with this addition, that the persons in the bed of the truck made the truck more top heavy on a curve.

This Court said in *Hunt v. Wooten*, 238 N.C. 42, 76 S.E. 2d 326, in respect to a plea of the affirmative defense of contributory negligence: "The first requirement is that the defendant must specially plead in his answer an act or omission of the plaintiff constituting contributory negligence in law; and the second requirement is that the defendant must prove on the trial the act or omission of the plaintiff so pleaded. Allegation without proof and proof without allegation are equally unavailing to the defendant."

The defendants in their pleas of contributory negligence as a defense and also in their answers, make no mention of the weight in the truck shifting to the left as the truck turned into the Harvey Point Road. In the absence of appropriate allegations on the subject, the presiding judge was neither required nor permitted in deciding as to whether or not to submit issues as to contributory negligence to consider whether the shifting to the left of the weight in the truck, as

it entered Harvey Point Road, proximately contributed to plaintiffs' injuries.

There is no evidence to the effect that the persons riding in the bed of the truck made it top heavy. In our opinion, there is no evidence, and no fair inference to be legitimately drawn therefrom, that the four persons riding in the bed of the truck standing up and holding on as they were, made the truck more difficult to manage.

In *Richardson v. State*, 203 Md. 426, 101 A. 2d 213, the Court said: "It is a matter of common knowledge that laborers are often hauled in trucks to their work, and that young people often ride in trucks for pleasure, without being considered as taking undue risks."

This is said in 5A Am. Jur., Automobiles and Highway Traffic, sec. 804: "The mere assumption of an unconventional position in or upon the vehicle is not of itself, however, a sufficient basis upon which to predicate a finding of contributory negligence."

We are aware of the line of cases in which the action was by one injured while riding in some unusual position (other than on the running board) of a motor vehicle, with a part of the body protruding from the automobile, or while riding in a standing position in the rear of a truck and being thrown from the truck without the truck turning over, against the owner or driver thereof, in which the court held that the question of contributory negligence was for the jury to determine. See cases cited in Annotations 104 A.L.R., p. 332 *et seq.;* 44 A.L.R. 2d 315, *et seq.*

*Rollison v. Hicks*, 233 N.C. 99, 63 S.E. 2d 190, has an entirely different factual situation. In that case the body of the truck consisted of an enclosed cab for the driver, and an open platform at the rear for the load. The platform was 14 feet in length, and was equipped with side railing extending backwards from the cab for a distance of about 5 feet. Concrete blocks, weighing 40 pounds each comprised two-thirds of the load, were stacked at the bottom, and doors and windows were placed on them, resting on the blocks and not fastened on the truck in any way. The load covered the forepart of the platform, leaving a space four feet long vacant at the rear. The cab, the side railings, and the load were approximately equal in height, for they came up a little above plaintiff's waist when he stood upon the platform of the truck. Plaintiff concluded that "the windows could easily fall and break," and rode on the vacant space at the back of the platform for the purpose of steadying the windows and preventing them from falling. While the truck was being driven by defendant over a bumpy highway at a speed of 40 miles an hour, it struck the elevated ridge just east of Alligator Creek bridge with a

resounding thump actually heard at least 200 yards away. The impact of the truck and elevated ridge hurled one of the unfastened doors against plaintiff, knocking him from the rear of the truck to the paved road and inflicting upon him serious injuries. In that case an issue of contributory negligence was properly submitted to the jury, this Court holding that whether plaintiff was contributorily negligent was one of fact for the jury, and not one of law for the court.

In the instant case Skinner was standing in the bed of the truck holding on to the cab, and Percy Brothers was standing in the bed of the truck behind Skinner with one hand on the cab and one hand holding on the rail behind the stakes. The boards and rails of the bed of the truck were about as high as the cab. The overturning of the truck threw them out. No circumstances are shown by the evidence to indicate that riding, as these plaintiffs were at the time, was inherently or patently dangerous. Both plaintiffs protested against Austin's dangerous speed on such a road as he was driving on, and had no opportunity to get off the truck with safety to themselves before it overturned.

The overturning of the truck and the injuries to both plaintiffs were not the logical consequences of plaintiffs riding standing in the bed of the truck, but were the sole result of Austin's negligent operation of the truck. Even if it should be conceded — and we do not concede it under the facts here — that plaintiffs failed to exercise due care for their own safety by riding standing in the bed of the truck and holding on as they were, with stakes and railings on the bed of the truck as high as the cab, such riding in that position is not sufficient to support a finding that it proximately contributed to their injuries. The trial court properly refused to submit to the jury the tendered issues as to contributory negligence.

On the second issue in each case Judge Paul properly charged the jury in the same words in part as follows: "I further charge you that if you believe the defendant's evidence that on May 22, 1954, Eddie P. Austin, at about 6:00 P.M., finished his work or employment at Charlie H. Jernigan's wood yard, parked the pickup truck and checked in with Earl Newby at Jernigan's cab stand and went home and that Austin discovered he had the truck keys in his pocket and later went back and drove the pickup truck to Hertford and later to Southern Shores Beach, and that he did so without Jernigan's knowledge or consent, and that on that night, May 22, 1954, Austin was driving Jernigan's truck for his, Austin's, own purpose and in pursuit of his private or personal ends, in visiting his girl friend in Hertford and

going to a dance at Southern Shores Beach and not on business for the defendant Jernigan, but in pursuit of something unrelated and disconnected with his, Austin's, employment with Jernigan, the Court charges you that if you find those things to be true, it would be your duty to answer the second issue NO." *Whiteside v. McCarson*, 250 N.C. 673, 110 S.E. 2d 295.

All the remaining exceptions and assignments of error, directed principally to the evidence and to the charge, have been carefully examined, and are overruled. They present no new or novel points that have not been discussed in our decisions. The appellants have not shown prejudicial error. The verdicts and judgments will be sustained.

At the October Term 1957 of Perquimans County Superior Court the presiding judge entered an order that as the plaintiff Percy Brothers had come of age, his next friend be discharged, and the action be continued with 'Percy Brothers as party plaintiff. His complaint in the record before us shows that he is still appearing by his next friend.

No Error.

HIGGINS, J., not sitting.